# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____ )
                                   )

**WILLIAM BRACE,**             )
                                   )

      **Plaintiff,**        )   Civil Action No. 3:11-cv-02101 - ARC
                                   )

      **v.**                    )
                                   )

**LUZERNE COUNTY et al.,**   )
                                   )

      **Defendants.**     )
_____ )

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION
TO DISMISS OF DEFENDANTS LUZERNE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, LUZERNE COUNTY RETIREMENT BOARD,
MARYANNE C. PETRILLA, THOMAS J. COONEY, STEPHEN A.
URBAN, WALTER L. GRIFFITH JR., AND MICHAEL A. MORREALE**

                    **Carl J. Poveromo, Esquire
Attorney I.D. No. 44713
Rinaldi & Poveromo, P.C.
520 Spruce Street
Post Office Box 826
Scranton, PA  18501
Telephone:  (570) 346-7441
Facsimile:  (570) 346-8170
E-Mail:  cjp@lawinpa.com**

**Attorney for Plaintiff**

**TABLE OF CONTENTS**

**Page**

TABLE OF CITATIONS ......................................................................... ii

I.    INTRODUCTION ...........................................................................1

II.   STATEMENT OF FACTS ...............................................................2

III.  ARGUMENT

       A.    STANDARD FOR MOTION TO DISMISS ........................................3

       B.    THE PENNSYLVANIA PUBLIC EMPLOYEE PENSION FORFEITURE ACT, 43 P.S. § 1312, DOES NOT MANDATE THE FORFEITURE OF PLAINTIFF'S RETIREMENT BENEFITS ........................................................................................5

       C.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHTS TO DUE PROCESS  12

       D.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION .....................................................................19

       E.    THE INDIVIDUAL DEFENDANTS HAVE NO QUALIFIED IMMUNITY ........................................................................................25

IV.  CONCLUSION ................................................................................29

CERTIFICATE OF SERVICE

i

# TABLE OF CITATIONS

**Cases**                                                                    **Page**

*Alderson v. State*, 273 S.W.3d 533 (Mo. 2009) ......................................21

*Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990) .......................................27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................4

*Baldwin v. Univ. Pittsburgh Med. Ctr.*, 636 F.3d 69 (3d Cir. 2011) ....................................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................4

*Bellomini v. State Employees' Ret. Bd.*, 498 Pa. 204, 445 A.2d 737 (1982) ...............................................12

*Borough of Jim Thorpe v. Jim Thorpe Borough Police Dep't*, 682 A.2d 73 (Pa. Commw. Ct. 1996) .....................................14

*Bowman v. Burroughs*, Civil Action No. 07-185, 2008 WL 5427910 (W.D. Pa. Dec. 30, 2008) ........................................18

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .................................4

*Cherillo v. Retirement Board of Allegheny*, 796 A.2d 420 (Pa. Commw. Ct. 2002)…………………………………..17

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ...................................18

*Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421 (N.D.N.Y. 2005) ............................................................28

*Commonwealth v. Abraham*, 2010 PA Super 104, 996 A.2d 1090 ................................................................................5

*Commonwealth v. DeAngelo*, 401 Pa. Super. 409, 585 A.2d 525 (1991).................................................................9

# TABLE OF CITATIONS (CONT'D)

**Cases**                                                                                              **Page**

*Commonwealth v. Garzone*, ___ Pa. ___, 34 A.3d 67 (2012) ..................................6

*Commonwealth v. Parner*, 448 Pa. Super. 470, 672 A.2d
    314 (1966)...........................................................................................................9

*Dombrowski v. City of Phila.*, 431 Pa. 199, 245 A.2d 238
    (1968)...............................................................................................................12

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) ..........................19, 20, 21, 23

*Ginaitt v. Haronian*, 806 F. Supp. 311 (D.R.I. 1992)......................................14, 25

*Gioffre v. Phila. Bd. of Pensions & Ret.*, No. CIV.
    A. 97-5433, 1999 WL 239410 (E.D. Pa. Mar. 31,
    1999) ................................................................................................................17

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ....................................24

*Horsley v. Phila. Bd. of Pensions & Ret.*, 97 Pa.
    Commw. 558, 510 A.2d 841 (1986)............................................................16

*Jackson v. Roslyn Bd. of Educ.*, 596 F. Supp. 2d 581
    (E.D.N.Y. 2009)...........................................................................................22, 23

*Kapell v. Inc. Vill. of Greenport*, 63 A.D.3d 940, 881
    N.Y.S.2d 469 (2d Dep't 2009) .....................................................................20

*Kegolis v. Borough of Shenandoah*, Civil Action
    No. 3:03-CV-0602-ARC (M.D. Pa. file Oct. 4, 2004) ................................25

*Kegolis v. Borough of Shenandoah*, No. 3:03-CV-0602-ARC,
    2006 WL 3814311 (M.D. Pa. Dec. 27, 2006) ..............................................14

*Larsen v. Senate of Pa.*, 154 F.3d 82 (3d Cir. 1998) ..............................................26

# TABLE OF CITATIONS (CONT'D)

**Cases**             **Page**

*Luzerne County Ret. Bd. v. Seacrist*, 988 A.2d 785
(Pa. Commw. Ct. 2010) .................................................................24

*Mazzo v. Phila. Bd. of Pensions & Ret.*, 531 Pa. 78,
611 A.2d 193 (1992) ....................................................................4

*Merlino v. Phila. Bd. of Pensions & Ret.*, 916 A.2d
1231 (Pa. Commw. Ct. 2007) ......................................................11

*Mun. of Hermitage v. Hickory Twp. Fraternal Order of Police
Lodge No. 82 ex rel. Novotny*, 89 Pa. Commw. 325,
492 A.2d 494 (1985)....................................................................12

*Nelson v. W. Beaver County Sch. Dist.*, 89 Pa. Commw. 126,
491 A.2d 964 (1985)....................................................................12

*Olsen v. Pa. State Employes' Ret. Bd.*, 688 A.2d 255
(Pa. Commw. Ct. 1997) ...............................................................15

*Phillis v. Harrisburg Sch. Dist.*, Civil Action No. 1:07-cv-1728,
2011 WL 6100621 (M.D. Pa. Dec. 7, 2010) ...............................20

*Roche v. State Employes' Ret. Bd.*, 731 A.2d 640 (Pa.
Commw. Ct. 1999) ..............................................................10, 11

*Santana v. Cook County Bd. of Review*, 700 F. Supp. 2d 1023
(N.D. Ill. 2010) ...........................................................................27

*Scavone v. Pa. State Police*, Civil Action No. 3:09-CV-1623,
2011 WL 6100621 (M.D. Pa. Dec. 7, 2011) ...............................20

*Schimes v. Barrett*, 427 F. App'x 138 (3d Cir. 2011), *aff'g*
No. 3:07cv872, 2010 WL 1330179 (M.D. Pa. Mar. 30,
2010) ...........................................................................................13

**Cases** **Page**

*Stuart v. Flynn*, 380 F. Supp. 424 (W.D. Pa. 1974)...............................................15

*United States v. Kemp*, 500 F.3d 257 (3d Cir. 2007).............................................9

*United States v. Long*, 654 F.2d 911 (3d Cir. 1981) ……………………………5

*United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398
     (1999).............................................................................................................9

*United States v. Wright*, 665 F.3d 560 (3d Cir. 2012) ..........................................9

*Zaloga v. Prov. Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d
     623 (M.D. Pa. 2009) .....................................................................................3

**Statutes**

18 Pa.C.S. § 4701 ............................................................... 3, 7, 8, 9 passim

18 Pa.C.S. § 4902 ....................................................................................10, 11

43 P.S. § 1312 ..................................................................... 1, 3, 4, 6 passim

65 P.S. § 403 ..........................................................................................9

71 P.S. § 776.3 .......................................................................................10

18 U.S.C. § 666 .................................................................. 2, 7, 9, 19 passim

18 U.S.C. § 1621 ....................................................................................10, 11

18 U.S.C. § 1623 ....................................................................................11

42 U.S.C. § 1983 ............................................................. 16, 21, 22, 25 passim

3d Cir. Internal Operating Proc. 5.7....................................................13

## TABLE OF CITATIONS (CONT'D)

**Statutes**                                                           **Page**

Fed. R. App. P. 32.1 ................................................................13

Fed. R. Civ. P. 12 ...............................................................1, 4

U.S. Const. amend. XIV ........................................................22

# I. INTRODUCTION

Plaintiff William Brace, by his undersigned counsel, hereby submits this brief in opposition to the Motion to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants Luzerne County Employees' Retirement System, Luzerne County Retirement Board, Maryanne C. Petrilla, Thomas J. Cooney, Stephen A. Urban, Walter L. Griffith Jr., and Michael A. Morreale.

Contrary to assertions by the Defendants in their Memorandum in support of their Motion, the conduct to which Brace pleaded guilty according to a federal statute is not at all the "exact scenario" envisioned by the legislators who enacted the Pennsylvania Public Employee Pension Forfeiture Act ("PEPFA"), 43 P.S. § 1312. It is not enough to warrant forfeiture of Brace's pension that he engaged in conduct that fell short of the general standard of behavior expected from public officials, or that Brace's conduct was not in keeping with the sentiment that may underlie PEPFA.

On the contrary, the legislature was much more specific in setting forth what crimes would warrant forfeiture and, by extension, what crimes would not. As is discussed *infra*, since the federal crime to which Brace pleaded guilty is not substantially the same as the state crime of bribery, as is contended by the Defendants, the Defendants erred as a matter of law in depriving Brace of the pension benefits he had begun to receive.

The Defendants erroneously have described a very carefully and specifically drawn statute, PEPFA, as if it is instead an open-ended grant of authority to cause the

forfeiture of a pension whenever there is criminal behavior and a guilty plea by a public official.  Ignoring the very specific descriptions in PEPFA as to what crime or crimes may warrant forfeiture, the Defendants have instead painted a picture much too broadly, stating inaccurately that "[i]n order to receive his pension benefits, plaintiff was obligated to remain free of a criminal conviction or guilty plea related to his public office/employment—certainly not too much to ask of our public officials."  (Defs.' Mem. Supp. Mot. to Dismiss Compl. 2.)  By this description, Brace would lose his pension simply because he pleaded guilty to *any* crime related to his public position, but that is not what PEPFA requires or even allows.

## II.  STATEMENT OF FACTS

Except for the argumentative and incorrect statement by the Defendants that there are "fatal deficiencies" in Brace's claims, Brace does not contest the Defendants' general summary of the facts of this case, most of which is taken from the allegations in Brace's Complaint.

On January 6, 2010, Brace pleaded guilty to the federal crime of Corrupt Receipt of a Reward for Official Action Concerning Programs Receiving Federal Funds, pursuant to 18 U.S.C. § 666(a)(1)(B).  The Retirement Board terminated Brace's retirement benefits after concluding that the federal crime to which Brace pleaded guilty is the same as one or more of the state law crimes enumerated in PEPFA, 43 P.S. § 1312.  More specifically, the Defendants have taken the position that termination of Brace's pension

was warranted under section 1313, because Brace's federal crime is "substantially the same" as the crime of Bribery in Official and Political Matters, 18 Pa.C.S. § 4701.

Although the critical fact goes unmentioned by the Defendants, at no time before terminating Brace's pension benefits did the Defendants give Brace any hearing, or any other opportunity, formal or informal, to be heard on the matter. (Compl. 7-9.)

### III. ARGUMENT

A.  **STANDARD FOR MOTION TO DISMISS.**

A complaint may not be dismissed for failure to state a claim merely because it appears unlikely that the plaintiff can prove alleged facts or will ultimately prevail on the merits. *Baldwin v. Univ. Pittsburgh Med. Ctr.*, 636 F.3d 69 (3d Cir. 2011). The issue on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. *Zaloga v. Prov. Life & Accid. Ins. Co. of Am.*, 671 F. Supp. 2d 623 (M.D. Pa. 2009).

The allegations in the complaint must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [plaintiff is entitled to relief]." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) (on a motion to dismiss for failure to state a claim upon which relief can be granted, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged). Plausibility "is not akin to a probability requirement"; rather, plausibility requires "more than a sheer possibility." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949. Brace submits that in this case his Complaint easily crosses this "plausibility" threshold as to all of his causes of action, and that therefore the Defendants' Rule 12(b)(6) Motion must be denied.


**B.  THE PENNSYLVANIA PUBLIC EMPLOYEE PENSION FORFEITURE ACT, 43 P.S. § 1312, DOES NOT MANDATE THE FORFEITURE OF PLAINTIFF'S RETIREMENT BENEFITS.**

In the course of finding that an ordinance under which police officers were denied benefits was preempted by the PEPFA, the Supreme Court of Pennsylvania made some highly relevant observations about the Act. In *Mazzo v. Philadelphia Board of Pensions & Retirement*, 531 Pa. 78, 611 A.2d 193 (1992), the court stated that in enacting PEPFA, the legislature

> regarded pensions as important property interests that deserve a certain measure of protection. Indeed, it has long been recognized in this Commonwealth that pensions for public employees are not mere gratuities provided by the employer, but rather are deferred compensation for services rendered in the past. *See Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board*, 503 Pa. 219, 222, 469 A.2d 141, 142 (1983) (plurality opinion compiling cases).

*Id.* at 84, 611 A.2d at 196. The court in *Mazzo* also emphasized that

> *PEPFA invokes only very narrow and clearly defined grounds for forfeiture, thus reflecting the tenor of our law which disfavors provisions broadly imposing forfeiture. See generally Fisher Estate*, 442 Pa. 421, 424, 276 A.2d 516, 518-19 (1971) ("[F]orfeitures are not favored in the law and are to be strictly construed."); *Bilec v. Auburn & Associates, Inc. Pension Trust*, 403 Pa.Super. 176, 186, 588 A.2d 538, 543 (1991) ("[F]orfeitures are

not favored in the law . . . especially in cases involving employee pensions."), *appeal denied*, 528 Pa. 620, 597 A.2d 1150 (1991)(emphasis added).

*Id.* at 84-85, 611 A.2d at 196-97; *see also United States v. Long*, 654 F.2d 911 (3d Cir. 1981) (a criminal statute must be strictly construed and any ambiguity must be resolved in favor of lenity; the "rule of lenity" applies not only to substantive ambit of criminal prohibitions but also to penalties they impose, including forfeiture provisions).

In *Commonwealth v. Abraham*, 2010 PA Super 104, 996 A.2d 1090, the court ruled that forfeiture of the defendant's pension under PEPFA, as a consequence of pleading guilty to indecent assault, was punitive in nature and intimately connected to the criminal process, such that the defendant's attorney, in order to provide effective assistance, was required to warn the defendant that forfeiting his pension would be a consequence of pleading guilty; the loss of the pension was automatic and inevitable, the stakes were high, the consequences were succinct, clear, and distinct, and only criminal behavior triggered the forfeiture. Thus, as a punitive or penal statute, PEPFA comes within the well-settled principle that where an ambiguity is found in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. *Commonwealth v. Garzone*, ___ Pa. ___, 34 A.3d 67 (2012). In the instant case, this means that the federal and state statutes at issue here, especially the ambiguous "substantially the same" language in section 1312, must be interpreted in the light most favorable to Brace.

With the above-described guiding principles in mind, it becomes all the more clear that the Defendants acted contrary to Pennsylvania law when they terminated Brace's retirement benefits. It is undisputed that the federal crime to which Brace pleaded guilty is not among the crimes set forth in section 1312 as "crimes related to public office or public employment," that is, crimes which may justify forfeiture and termination of a pension. Instead, the Defendants must rely on the provision in section1312 stating that "[i]n addition to the foregoing specific crimes, the term also includes all criminal offenses as set forth in Federal law *substantially the same* as the crimes enumerated herein." 43 P.S. § 1312 (emphasis added). More specifically, the Defendants' contention rests entirely on the erroneous premise that termination of Brace's pension was justified because his federal crime is "substantially the same" as the crime of bribery in official and political matters, as set forth in Title 18 of the Pennsylvania Consolidated Statutes, section 4701.

The two criminal statutes to be compared read as follows:

(a)     Whoever, if the circumstance described in subsection (b) of this section exists—

    (1)     being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

    . . . .

        (B)     corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization,

government, or agency involving anything of value of $5,000 or more; or

. . . .

shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 666(a)(1)(B).

> (a)    Offenses defined.—A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
>
> > (1)    any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;
> >
> > (2)    any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or
> >
> > (3)    any benefit as consideration for a violation of a known legal duty as public servant or party official.

18 Pa.C.S. § 4701(a).

The federal crime to which Brace pleaded guilty, the formal name of which is "Corrupt Receipt of a Reward for Official Action Concerning Programs Receiving Federal Funds," is not substantially the same as the Pennsylvania bribery statute because of the important differences in the statutes concerning the matter of the defendant's intent and the state of mind of the giver and the recipient. The federal crime can be committed simply by receiving a reward or gratuity in connection with government business or a government transaction. By contrast, bribery under the state statute requires that there be

a pecuniary benefit "as consideration" for some action by a government official, that is, as part of a quid pro quo or an agreement in which pecuniary benefit is given in exchange for a desired official action. No such agreement, nor any resulting official action, was part of the facts which led to Brace's guilty plea, so that he has not been adjudicated of any crime that is "substantially the same" as bribery in section 4701(a).

This distinction has support in a closely analogous decision by the U.S. Supreme Court. In *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), the Court stated that to convict under the federal bribery statute (the counterpart to section 4701), there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while an illegal gratuity under federal law (the counterpart to 18 U.S.C. § 666(a)(1)(B)) may constitute merely a reward for some future act that a public official will take and may already have determined to take, or for a past act that he has already taken. On at least two occasions, the Third Circuit has recognized this same distinction that was articulated in *Sun-Diamond Growers of California*. *United States v. Wright*, 665 F.3d 560, 567-68 (3d Cir. 2012); *United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007).

Pennsylvania law also acknowledges a distinction between bribery and illegal gratuities. *See Commonwealth v. DeAngelo*, 401 Pa. Super. 409, 585 A.2d 525 (1991) (receipt of money by supervisor of Philadelphia Bureau of Licenses and Inspections in exchange for his investment "advice" and distribution of public information is simply insufficient to constitute a violation of section 4701); *see also Commonwealth v. Parner*,

448 Pa. Super. 470, 672 A.2d 314 (1966) (the existence of requisite criminal intent to violate section 4701 distinguishes the crime of bribery pursuant to section 4701 from offenses under the State Ethics Act, 65 P.S. § 403, and the State Adverse Interest Act, 71 P.S. § 776.3, which prohibits a public official from taking anything of value that might influence his or her official action or judgment).

The distinction between the federal statute under which Brace pleaded guilty and the state bribery statute goes to the essential elements of the respective crimes, and thus is more than enough to preclude a finding that the two crimes delineated in those statutes are "substantially the same." That one or more differences in the elements for a crime, or in the burdens of proof, requires the conclusion that the federal and state criminal statutes are not "substantially the same" under section 1312 is demonstrated well by the decision in *Roche v. State Employes' Retirement Board*, 731 A.2d 640 (Pa. Commw. Ct. 1999).

In *Roche*, the court held that the federal crime of false declarations before a grand jury or court, a crime to which a former state employee pleaded guilty, was not substantially the same as the state crime of perjury for purposes of PEPFA, which defined the term "crime related to public employment" as including perjury. (According to the court, it was the first time that it had the occasion to interpret the "substantially the same as" language in section 1312.) In order to obtain a conviction under either the Pennsylvania or the federal perjury statute, it must be shown beyond a reasonable doubt that, as an element of the offense, the accused acted willfully. 18 U.S.C. § 1621; 18 Pa.C.S. § 4902(a). In addition, under either the Pennsylvania or the federal perjury

9

statute, a conviction cannot be based on the uncorroborated testimony of one witness. 18 U.S.C. § 1621; 18 Pa.C.S. § 4902(f). In contrast, in order to obtain a conviction for the federal crime of false declarations before a grand jury or court, it must merely be shown that the accused acted knowingly. 18 U.S.C. § 1623(a). In addition, in order to obtain a conviction under this section, there is no burden to prove the offense by any particular number of witnesses or by documentary or other type of evidence. *Id.* § 1623(e); *Roche*, 731 A.2d at 648. Just as making false declarations before a court and perjury, though roughly similar in nature, were not "substantially the same" under the exacting scrutiny used in *Roche*, in this case, corrupt receipt of a reward and bribery, though having some similarity, are not "substantially the same" crimes for purposes of PEPFA. The Defendants erred, and violated Brace's rights in the process, when they decided otherwise.

The significant differences in the federal and state crimes here, and in *Roche*, make these cases readily distinguishable from the circumstances in *Merlino v. Philadelphia Board of Pensions & Retirement*, 916 A.2d 1231 (Pa. Commw. Ct. 2007). In that case, the court found that the crime of making false statements to a federal agency, to which a police officer pleaded guilty, was substantially similar to state crimes of making false reports to law enforcement agencies and unsworn falsification to authorities, which were crimes listed in the city retirement code that warranted denial of a police officer's application for retirement benefits.

## C.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHTS TO DUE PROCESS.

When an employee has satisfied conditions placed by a retirement system on his right to retirement benefits, his right to benefits becomes vested and a contractual obligation exists, with only the enjoyment thereof postponed.  *Dombrowski v. City of Phila.*, 431 Pa. 199, 245 A.2d 238 (1968); *Mun. of Hermitage v. Hickory Twp. Fraternal Order of Police Lodge No. 82 ex rel. Novotny*, 89 Pa. Commw. 325, 492 A.2d 494 (1985); *Nelson v. W. Beaver County Sch. Dist.*, 89 Pa. Commw. 126, 491 A.2d 964 (1985); *see also Bellomini v. State Employees' Ret. Bd.*, 498 Pa. 204, 445 A.2d 737 (1982) (retirement provisions for public employees constitute deferred compensation for service actually rendered in past; faithful performance of public office was not an implied condition to receipt of a pension, and therefore state employees, who had complied with all conditions necessary to receive their retirement allowances at time of enactment of statute providing for disqualification and forfeiture of retirement benefits available when official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment, had vested retirement rights; thus, legislature could not constitutionally deny them their benefits retroactively).

For purposes of Brace's substantive and procedural due process claims, his vested pension rights are clearly property interests entitled to due process protections. Regarding substantive due process, the Third Circuit at the very least has recently assumed that pension or retirement benefits are interests that will support a substantive due process

11

claim in a proper case. In *Schimes v. Barrett*, 427 F. App'x 138 (3d Cir. 2011), *aff'g* No. 3:07cv872, 2010 WL 1330179 (M.D. Pa. Mar. 30, 2010), the court concluded that there was no evidence that the city of Scranton acted in a way that shocked the conscience in denying a former employee a pension, as required for his substantive due process claim.[1] In *Schimes*, the city's position, supported by advice from its solicitor, was that the employee was not eligible for a pension under an early retirement offer. The Court of Common Pleas of Lackawanna County concluded that the city was wrong, and the city appealed to the Commonwealth Court of Pennsylvania. Even though the decision was affirmed and the employee was ultimately vindicated, the Court of Appeals affirmed the district court's determination that there was insufficient evidence the city took its legal position in bad faith or acted with an intent to injure the former employee.

The Third Circuit in *Schimes* did not expressly address the property interest issue, but there would have been no point or purpose to considering the remaining elements for a substantive due process claim had the court not been proceeding on the threshold premise that a property interest was present. As for the disposition of the merits of the substantive due process claim in *Schimes*, Brace submits that the arbitrary, capricious, and discriminatory manner in which the Defendants cut off his pension raises at least a plausible substantive due process claim, assuming that the supportive facts must "shock the conscience." There is factually similar precedent for finding a violation of substantive due process. *See Ginaitt v. Haronian*, 806 F. Supp. 311 (D.R.I. 1992) (retired

---

[1] While the Third Circuit's Internal Operating Procedure 5.7 states that traditionally it does not cite nonprecedential opinions and is not bound by them, Rule 32.1(a)(1) of the Federal Rules of Appellate Procedure states that any unpublished opinion may be cited if it was issued after January 1, 2007.

public employee's substantive due process rights were violated when city officials blatantly disregarded city code by revoking his pension and consciously deviated from the requirements of the code).

This court decided in *Kegolis v. Borough of Shenandoah*, No. 3:03-CV-0602, 2006 WL 3814311 (M.D. Pa. Dec. 27, 2006), that a pension benefit, whether vested or unvested, is not a property interest entitled to substantive due process protection. Brace respectfully submits that in the time since *Kegolis* was decided, the Third Circuit has indicated in a more on-point decision its willingness to find such protection for pension rights, under the right set of circumstances.

Also providing at least strong implicit support for treating a vested pension as a property right for substantive due process purposes is *Borough of Jim Thorpe v. Jim Thorpe Borough Police Department*, 682 A.2d 73 (Pa. Commw. Ct. 1996). There, an amendment to a police pension statute mandating the refund of pension contributions did not violate substantive due process rights by retroactively impairing contractual rights in pension plan assets, because the contractual rights granted by amendment were altered for a certain time period, not improperly impaired. Again, the presence of a protected property right is presumed, or the remaining analysis would have been superfluous. In addition, unlike in *Borough of Jim Thorpe*, where circumstances justified the government's actions, in this case the complete deprivation of Brace's pension, on fatally flawed grounds, constitutes deprivation of his property without substantive due process.

As for procedural due process, there can be no doubt that Brace's vested pension, which he had begun to receive before the Defendants terminated it, is a protected property right, and that Brace was entitled to procedural due process before it could be taken from him by the Government. *See Olsen v. Pa. State Employes' Ret. Bd.*, 688 A.2d 255 (Pa. Commw. Ct. 1997) (retirement benefits administered by State Employes' Retirement Board are property rights, and hearing and appeal proceedings to determine whether particular claim is meritorious must be conducted in accordance with due process and with rules of procedure that Board has adopted); *Cherillo v. Retirement Board of Allegheny*, 796 A.2d 420 (Pa. Commw. Ct. 2002) (employee had a property right in his disability retirement benefits entitling him to a hearing that comported with local agency law, including a right to present and cross-examine witnesses, right to full stenographic record and right to an adjudication containing findings of fact).

In a case with close similarities to Brace's circumstances, a federal district court in Pennsylvania ruled that pension rights which a county employee received after reaching the retirement age of 65, and which were paid for approximately nine years prior to the employee's election as a county jury commissioner, were a vested property right under the law of Pennsylvania and could not be terminated; accordingly, the acts of individual members of a county retirement board in refusing to pay the employee pension benefits which he had accrued over his many years of service in county government constituted a deprivation of the employee's civil rights under color of state law, as well as a denial of

14

due process. *Stuart v. Flynn*, 380 F. Supp. 424 (W.D. Pa. 1974) (judgment for plaintiff under 42 U.S.C. § 1983). The same result should obtain here.

The procedural process that was due in this case included, at a minimum, a pretermination right to be heard in some fashion, as opposed to the precipitous cutting off of Brace's pension without notice or opportunity to be heard in any form or fashion. In *Horsley v. Philadelphia Board of Pensions & Retirement*, 97 Pa. Commw. 558, 510 A.2d 841 (1986), due process guarantees did not mandate a pretermination hearing prior to the decision by a city board of pensions and retirement to terminate pension benefits of a retired employee, following the employee's plea of guilty to two counts of having conspired, while employed by the city, to violate the Hobbs Act. However, the court's reasoning was such as to make Brace's case readily distinguishable from *Horsley*:

> In applying the United States Supreme Court's interest analysis criteria in *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), the trial court weighed the employee's strong interest in maintaining his pension benefits against the risk of erroneous deprivation and, recognizing that the facts were undisputed, concluded that *the risk of erroneous deprivation was negligible.* Additionally, the trial court also recognized the city's interest in protecting its pension system from "unnecessary payments to dishonest or felonious employees to be legitimate and compelling" in correctly determining that due process did not require a pre-termination hearing in this case.

*Id.* at 567, 510 A.2d at 846 (emphasis added). In Brace's case, unlike in *Horsley*, the risk of an erroneous deprivation of vested pension rights, far from being negligible, was in fact likely, and has already occurred because of the Defendants' errors in their interpretation and application of PEPFA. Thus, even conceding the Defendants' interest

on its side of the scales, Brace's strong interest in keeping his vested pension, and the high risk of an erroneous deprivation of that pension, mandated that Brace be afforded a predeprivation opportunity to be heard on the propriety and legality of terminating his pension. Instead, the Defendants violated Brace's right to procedural due process by precipitously taking away his pension, without giving him even the slightest opportunity to challenge the validity of such action.

The Defendants have cited and discussed at length the case of *Gioffre v. Philadelphia Board of Pensions & Retirement*, No. CIV. A. 97-5433, 1999 WL 239410 (E.D. Pa. Mar. 31, 1999), claiming that it closely resembles the instant case. On the contrary, *Gioffre* is readily distinguishable from this case in important respects. In that case, the employee was arguing over pension benefits he had not yet begun to receive. More importantly, the employee in *Gioffre* was given multiple opportunities to be heard in various hearings, whereas Brace had not a single such opportunity.

Most importantly, the Defendants stress that in *Gioffre*, the court found that no hearing could have altered the fact that, by operation of law, any interest that the employee had in a pension had been extinguished or forfeited. In stark contrast with such circumstances, Brace should have been afforded an opportunity to contest before these Defendants made their erroneous decision that he had pleaded guilty to a federal crime that was "substantially the same" as one of the crimes listed in Title 43 Pennsylvania Statutes section 1312. It simply is not the case, as the Defendants assert, that they had no discretion once Brace pleaded guilty to a federal crime. Rather, they abused the

discretion they had when they made the "substantially the same" finding. While the Defendants state in their Memorandum that "Plaintiff's right to a pension was contingent on his remaining free of *any* federal or state conviction for, or plea to, corrupt conduct related to his public employment." (Defendants' Mem. 14 (emphasis added)). In fact, Brace could legally lose his pension only if his federal crime was substantially the same as the very specific crimes enumerated in section 1312. Brace was denied his right and opportunity to have his say on this point before being deprived of his pension.

While there are not significant factual issues in this case, the Defendants have acknowledged that a valid purpose to be served by a pretermination hearing is to give an employee an opportunity to invoke the discretion of the person or persons responsible for making the termination decision in a situation where the appropriateness or necessity of the termination is subject to dispute. *Bowman v. Burroughs*, Civil Action No. 07-185, 2008 WL 5427910, at *8 (W.D. Pa. Dec. 30, 2008) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). In the instant case, such a pretermination hearing, had it been given to Brace, would have afforded just such an opportunity to question the discretion exercised by the Defendants when they erroneously made the "substantially the same" conclusion concerning 18 U.S.C. § 666(a)(1)(B) and Title 18 Pennsylvania Consolidated Statutes section 4701.

**D.  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.**

The primary rationale for the Supreme Court's decision not to recognize a "class of one" equal protection claim asserted by a public employee in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), was that employment decisions are often "subjective and individualized," and government employment, absent legislation, is at will.  As the Court put it, "we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, *subjective* personnel decision in a seemingly arbitrary or irrational manner."  *Id.* at 605 (emphasis added).

For example, the plaintiff in *Engquist* was challenging a decision to include her in a layoff, allegedly for vindictive and malicious reasons.  The Court's rationale, and the resulting disfavor toward a class-of-one equal protection claim, has no application in the instant case, where there was nothing subjective about the Defendants' obligations toward the Plaintiff.  Rather, Brace's rights asserted in this action could better be described as practically ministerial in nature, had the Defendants properly interpreted applicable law.  To recognize Brace's equal protection claim as alleged in his Complaint would not cause the result about which the Court in *Engquist* was most concerned, that is, disturbance of the delicate balance Governments have struck between the rights of public employees and the Government's legitimate purpose in promoting efficiency and integrity in the

discharge of official duties, and in maintaining proper discipline in the public service. *Id.* at 607.

In contrast with the instant case, in *Scavone v. Pennsylvania State Police*, Civil Action No. 3:09-CV-1623, 2011 WL 6100621 (M.D. Pa. Dec. 7, 2011), cited by the Defendants, the decision challenged by the plaintiff was subjective in nature and did not involve improper application of a state statute, as the employer in that case had declined to hire the plaintiff as a liquor enforcement officer after he refused to have a tattoo removed. *See also Phillis v. Harrisburg Sch. Dist.*, Civil Action No. 1:07-cv-1728, 2011 WL 6100621, at *10 n.7 (M.D. Pa. Dec. 7, 2010) (claim by teacher terminated for disciplinary reasons; "As a result, the Equal Protection Clause is not implicated in the instant case where HSD is alleged to have made an individualized, *subjective* personnel decision in a seemingly arbitrary or irrational manner." (emphasis added)).

There are additional cases, decided since the *Engquist* decision, in which courts have proceeded to an equal protection analysis of claims concerning pensions or similar employment benefits but where, as here, there was no subjective decisionmaking involvement by the defendants. *See, e.g., Kapell v. Inc. Vill. of Greenport*, 63 A.D.3d 940, 881 N.Y.S.2d 469 (2d Dep't 2009) (petitioner, a retired mayor of village, sought review of resolution of village's board of trustees, which rescinded petitioner's entitlement to retirement health insurance benefits, and brought action under § 1983; policy of village's board of trustees, which treated retired village mayors and village board members differently from active village mayors and village board members with

19

regard to health insurance benefits, did not unconstitutionally deny retired mayor equal protection of laws; policy reflected orderly and rational basis for municipal expenditures); *Alderson v. State*, 273 S.W.3d 533 (Mo. 2009) (classifications set forth in statutes and rule governing eligibility for membership in the County Employees' Retirement Fund, which excluded from eligibility employees who were not subject to hiring, supervision, and termination by county and employees who were covered by an alternative retirement fund, were rationally related to legitimate state interests, and, thus, classifications did not violate equal protection guarantees in federal or state Constitutions; tying a finite retirement fund to a quintessential characteristic of employment, i.e., control, was, at a minimum, rational, and it was rational to carve out eligibility for a class of employees who might otherwise be left with no retirement fund whatsoever).

In addition to the reasons discussed above for not applying *Engquist* and its rationale to foreclose Brace's equal protection claim, there is an additional, and distinct, basis for such a finding. *Engquist* should not be used to preclude a class-of-one equal protection claim that is brought against defendants, like the Defendants here, who are effectively acting as administrators of an employee benefits program, rather than as discretionary decisionmakers. In *Jackson v. Roslyn Board of Education*, 596 F. Supp. 2d 581 (E.D.N.Y. 2009), a former custodian of a school district brought a § 1983 action against a board of education and school district, alleging that they had denied his

employee retirement benefits in violation of the Equal Protection Clause of the

Fourteenth Amendment. The court's discussion is instructive for this case:

> The plaintiff seeks to amend his complaint to add an Equal Protection claim
> as a "class of one," alleging that the defendants arbitrarily and selectively
> misinterpreted and enforced the Collective Bargaining Agreement and the
> Empire Plan Regulations in a manner differently from all other retired
> employees of the District and singled him out for that treatment with the
> intent to prevent him from receiving his entitled retirement benefits.
> Specifically, the plaintiff contends that information received at the
> December 17, 2007 deposition of Ann Marie Andreas, the head of the
> defendants' benefits department establishes that he was singled out for
> disparate application of the benefits regulations because all other retirees
> were offered the benefits package, including two individuals who were
> allowed to retire after having been accused of misappropriating millions of
> dollars in District funds.
>
> . . . .
>
> *The plaintiff contends that the Engquist Court's rationale in protecting*
> *discretionary employer assessment does not bar his claim because he is*
> *suing the District as administrator and regulator of its health insurance*
> *program, not as a discretionary decision maker. Indeed, the Engquist court*
> *recognized "the crucial difference . . . between the government exercising*
> *'the power to regulate or license, as lawmaker, and acting 'as proprietor,*
> *to manage [its] internal operations.'"* *Id.* at 2151, 170 L.Ed.2d at 983
> (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896,
> 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)).
>
> Although *the Court agrees that the plaintiff would likely be able to*
> *maintain an Equal Protection claim against the District in light of the*
> *distinctions set forth in Engquist*, the plaintiff still fails to state a viable
> Equal Protection claim. To maintain an Equal Protection claim as a "class
> of one," a plaintiff must show that (1) "[he] has been intentionally treated
> differently from others similarly situated," and (2) "there is no rational basis
> for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S.
> 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). Here, the
> plaintiff has failed to allege differential treatment from any similarly
> situated party. The Court finds that the plaintiff is not similarly situated to
> the two individuals who misappropriated funds from the District.
> According to the defendants, these individuals, a former Superintendent of

Schools and a former Assistant Superintendent of Schools were not involuntarily terminated, but instead, unilaterally resigned prior to any disciplinary charges being lodged against them. Further, the plaintiff has failed to allege that the District has provided health benefits to any party whose employment was involuntarily terminated similar to his situation.

*Id.* at 586-87 (emphasis added).

In the instant case, the reasoning in *Jackson*, derived from the clear intent of the Justices in *Engquist*, applies with equal force. Thus, Brace may press his equal protection claim against the Defendants, who were and are in the role of administrators of retirement benefits for former County employees. Moreover, unlike in *Jackson*, Brace has alleged, and will be able to show, that similarly situated employees or retirees for the County were treated more favorably than he was, with no rational basis for such preferred treatment.

Assuming that Brace's equal protection claim is treated as a class-of-one claim, he has stated a claim if it is at least plausible that he will be able to show (1) that the Defendants treated him differently from others similarly situated, (2) that the Defendants did so intentionally, and (3) that there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Brace's Complaint has clearly alleged the fact that he has intentionally been treated differently from other County employees who have been convicted of a crime not specifically included in PEPFA, in that concerning other such employees but not Brace, the Defendants have requested a declaratory judgment from a court of competent jurisdiction that the employee was disqualified from receiving retirement benefits. *See Luzerne County Retirement Bd. v. Seacrist*, 988 A.2d 785 (Pa. Commw. Ct. 2010).

(Compl. 14.)  In addition, Brace has alleged, and discovery is expected to confirm, that the Defendants had no rational basis for singling out Brace for different treatment by precipitously terminating his retirement benefits, instead of seeking a declaratory judgment on the applicability of PEPFA, as has been done regarding similarly situated County employees.  (Compl. 14-15.)

**E.    THE INDIVIDUAL DEFENDANTS HAVE NO QUALIFIED IMMUNITY.**

Brace does not dispute the Defendants' summary of the applicable principles when individual governmental defendants assert the defense of qualified immunity from § 1983 liability.  Brace does dispute their conclusion that the Defendants here are entitled to such immunity.  On the contrary, as is made clear from the authorities discussed, *supra*, when the Defendants terminated Brace's retirement benefits, their actions were not objectively reasonable; reasonable officials in the same situation and circumstances would have known that such action violated not only Brace's rights under state law, but also that such action violated one or more of his federal constitutional rights, including the rights to procedural and substantive due process and the right to equal protection.  *See Ginaitt*, 806 F. Supp. 311 (city officials who revoked pension in violation of city code knew or should have known that what they were doing did not comport with state or federal law, and thus they were not entitled to qualified immunity).

As this Court has concluded before, the right of a former employee to procedural due process in connection with the termination of retirement benefits having property interest status is so clearly established that officials alleged and found to have violated that right are not entitled to the defense of qualified immunity. Memorandum at 11-12, *Kegolis v. Borough of Shenandoah*, Civil Action No. 3:03-CV-0602-ARC (M.D. Pa. filed Oct. 4, 2004) (Caputo, J.) (denying Defs.' mot. dismiss).

To the same effect is *Larsen v. Senate of Pennsylvania*, 154 F.3d 82 (3d Cir. 1998). There, officials denying health benefits to a former justice of a state supreme court who was removed from office could not claim qualified immunity from a suit by the former justice alleging deprivation of due process rights, based on a belief by the officials that the former justice did not have any property rights supporting a due process claim; it should have been known to the officials that he had a vested property right to the benefits in question:

> Since Larsen was not afforded an opportunity to be heard regarding the propriety of terminating his medical benefits, reasonable officials could not have believed that Larsen received the process he was due in connection with a deprivation of a clearly established property right. Accordingly, appellants are not entitled to qualified immunity with respect to Larsen's due process claim.

*Id.* at 93.

In addition, regarding a claim in *Larsen* that is analogous to Brace's claim that the Defendants terminated his retirement benefits in violation of state law, and PEPFA in particular, the Third Circuit found that the officials who denied health benefits to the

former justice who was removed from office, on the ground that benefits were available only to retirees under the applicable plan, could not claim qualified immunity from suit; they could not reasonably have believed that the former justice was not covered, as the state supreme court had ruled that benefits were available to judges removed for misconduct. *Id.* at 88. In a similar manner, Brace submits that the Defendants could not reasonably have believed that, under PEPFA, Brace had to lose his retirement benefits, given pertinent authorities that should have made it clear to them that Brace's crime of Corrupt Receipt of a Reward for Official Action Concerning Programs Receiving Federal Funds, pursuant to 18 U.S.C. § 666(a)(1)(B), is not "substantially the same" as the state law crime of bribery proscribed in Title 18 Pennsylvania Consolidated Statutes section 4701.

The principles of equal protection raised by Brace's Complaint are equally well settled by case law concerning the rights of public employees, so that the Defendants also do not enjoy qualified immunity from liability for the violation of Brace's right to equal protection. *See Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990) (police captain and sergeant were not entitled to qualified immunity in sexual harassment action brought by female officers; general right which jury found defendants to have violated, right to be free from discrimination based upon sex in workplace, was well grounded in law and widely known to public by time of beginning of scenario for lawsuit); *Santana v. Cook County Bd. of Review*, 700 F. Supp. 2d 1023, 1033-34 (N.D. Ill. 2010) (former county board analyst's class-of-one equal protection rights were well established at the time of

board's alleged violation of those rights by banning his presence on board's premises and communicating that ban through the media, so as to preclude claim of qualified immunity from § 1983 liability on the part of board commissioners and employees; "Class-of-one equal protection is a well-established concept, and although *Engquist* limited class-of-one relief in a specific context (public employment), it does not muddy the waters so that a reasonable person could not have anticipated class-of-one liability for the ban plus the media announcement."); *Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421 (N.D.N.Y. 2005) (school official was not entitled to qualified immunity on high school student's class-of-one selective enforcement claim under §1983, which was grounded on allegations that his punishment for his conversations with fellow students concerning handguns and his subsequent possession of a handgun off school property was disproportionate to the punishment imposed upon other two students who either supplied or obtained handguns; in light of clearly established case law, a reasonable school official would have understood that it would be wrong to irrationally treat student differently from the other students involved in the incident).

## V.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by the Retirement Board Defendants should be denied in its entirety.

Dated:  March 14, 2012                          Respectfully submitted,

                                      s/Carl J. Poveromo
                                      Carl J. Poveromo, Esquire
                                      Attorney I.D. No. 44713
                                      Rinaldi & Poveromo, P.C.
                                      520 Spruce Street
                                      Post Office Box 826
                                      Scranton, PA  18501
                                      Telephone:  (570) 346-7441
                                      Facsimile:  (570) 346-8170
                                      E-Mail:  cjp@lawinpa.com

                                      Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing brief via electronic case filing (ECF) and by U.S. mail, postage prepaid, addressed as follows:

Robert S. Tintner, Esquire
Howard Flaxman, Esquire
Beth L. Weisser, Esquire
Fox Rothschild LLP
20th Floor
2000 Market Street
Philadelphia, PA 19103

Attorneys for Defendants Michael A. Morreale,
Walter L. Griffith Jr., Thomas J. Cooney,
Maryanne C. Petrilla, Stephan A. Urban,
Luzerne County Retirement Board, and
Luzerne County Employees' Retirement System

Joel M. Wolff, Esquire
David Z. Lantz, Esquire
Elliott Greenleaf & Dean
Suite 202
201 Penn Avenue
Scranton, PA 18503

Attorneys for Defendant Luzerne County

Donald G. Karpowich, Esquire
Sean W. Logsdon, Esquire
Kevin M. Walsh Jr., Esquire
85 Drasher Road
Drums, PA 18222

Attorneys for Defendant Luzerne County

Dated: March 14, 2012.　　　　　 s/Carl J. Poveromo
　　　　　　　　　　　　　　　　 Carl J. Poveromo, Esquire