**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM BRACE,

     Plaintiff,

         v.

COUNTY OF LUZERNE, LUZERNE
COUNTY EMPLOYEES' RETIREMENT
SYSTEM, LUZERNE COUNTY
RETIREMENT BOARD, MARYANNE C.
PETRILLA, CHAIRMAN/TRUSTEE,
individually and in her official capacity,
THOMAS J. COONEY, TRUSTEE,
individually and in his official capacity,
STEPHEN A. URBAN, TRUSTEE,
individually and in his official capacity,
WALTER J. GRIFFITH, JR., TRUSTEE,
individually and in his official capacity, and
MICHAEL A. MORREALE, TRUSTEE,
individually and in his official capacity,

     Defendants.

CIVIL ACTION NO. 3:11-02101


(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are Motions to Dismiss Plaintiff William Brace's Complaint filed by Defendants the County of Luzerne (the "County"), Maryanne C. Petrilla, Thomas J. Cooney, Michael Morreale, Stephen A. Urban, and Walter Griffith, in their individual and official capacities as officers of the County (collectively the "County Defendants") (Doc. 24) and by Defendants the Luzerne County Employees' Retirement System (the "Retirement System"), the Luzerne County Retirement Board (the "Retirement Board"), Maryanne C. Petrilla, Thomas J. Cooney, Michael Morreale, Stephen A. Urban,

and Walter Griffith (collectively the "Retirement System Defendants"). (Doc. 25.)[1]  Plaintiff, a former County employee, commenced this action after his retirement benefits were terminated by Defendants pursuant to the Pennsylvania Public Employee Pension Forfeiture Act, 43 P.S. §§ 1311, *et seq.*  Plaintiff alleges that the termination of his retirement benefits, as well as the manner in which they were terminated, violated the Contract Clause, the Due Process Clause, and the Equal Protection Clause.  Plaintiff also asserts various state-law claims against Defendants.  Defendants have moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because, even accepting all allegations in the Complaint as true, Plaintiff fails to allege a Contract Clause, Due Process Clause, or Equal Protection Clause claim, Plaintiff's federal claims will be dismissed.  And, because the federal claims will be dismissed, the Court will dismiss without prejudice the remaining state-law claims.

## I. Background

The facts as alleged in Plaintiff's Complaint are as follows:

Plaintiff was appointed to the position of Deputy Clerk of Courts with the Office of the Clerk of Courts in and for Luzerne County, Pennsylvania on October 3, 2001. (*Compl.*, ¶ 12.)  Upon appointment to the position of Deputy Clerk of Courts, Plaintiff was required by law to become a member of the Retirement System. (*Id*.)  Plaintiff served as Deputy Clerk of Courts until April of 2005, at which time he was appointed the Deputy Chief Clerk with the Board of Luzerne County Commissioners. (*Id*. at ¶ 13.)  Plaintiff served in this capacity until his retirement on November 4, 2008. (*Id*. at ¶ 14.)

Following Plaintiff's retirement, he filed an application with the Retirement Board for the payment of his retirement benefits. (*Id*.)  Plaintiff's application was approved by the Retirement Board and he began receiving regular retirement payments. (*Id*.)

---

[1]     The Retirement System Defendants move to dismiss the claims against Petrilla, Cooney, Morreale, Urban, and Griffith (collectively the "Individual Defendants") that are asserted against them in their personal capacities.

On November 12, 2009, Plaintiff entered into a written Plea Agreement with the United States Attorney for the Middle District of Pennsylvania. (*Id*. at ¶ 15.) Pursuant to the terms of the Plea Agreement, Plaintiff agreed to waive indictment by a federal grand jury and to plead guilty to an Information charging him with a violation of 18 U.S.C. § 666(a)(1)(B), Corrupt Receipt of a Reward for Official Action Concerning Programs Receiving Federal Funds, for accepting a tailor-made, monogrammed suit as a reward for supporting the efforts of a contractor who entered into a contract with the County. (*Id*.)

Prior to the acceptance of the written Plea Agreement by this Court, the Retirement System and/or Retirement Board and/or their members, agents, and employees in November of 2009 stopped or suspended the payment of Plaintiff's retirement benefits. (*Id*. at ¶ 16.) Later that month, after Plaintiff learned that his retirement benefits had not been deposited directly into his bank account, he was informed by the Retirement Board that his benefits were being withheld. (*Id*. at ¶ 17.) However, on December 3, 2009, once the Retirement System's solicitor was informed that Plaintiff's benefits had been prematurely suspended, the retirement benefits were reinstated. (*Id*.)

Plaintiff's Plea Agreement was accepted by this Court on January 6, 2010. (*Id*. at ¶ 18.) Thereafter, on January 29, 2010, Richard Hummer, Pension Coordinator for the Retirement Board, issued a letter informing Plaintiff that his benefits were terminated based on the unanimous vote of the Retirement Board members on December 21, 2009 and that the benefits were terminated at the time of the entry of his guilty plea. (*Id*. at ¶ 20.) Specifically, the Board concluded that the federal crime Plaintiff pled guilty to was the same as one or more of the crimes enumerated under Section 1312 of the Pennsylvania Public Employee Pension Forfeiture Act, 43 P.S. § 1312 ("PEPFA" or the "Pension Forfeiture Act"). (*Id*.) Ultimately, Plaintiff was sentenced to a three (3) month prison term, two (2) years supervised release, a ten-thousand dollar ($10,000.00) fine, and a special assessment of one hundred dollars ($100.00). (*Id*. at ¶ 19.)

Prior to the December 21, 2009 Retirement Board vote to terminate his benefits, Plaintiff was not given notice that the Retirement Board would be meeting to consider the

termination of his retirement benefits. (*Id*. at ¶ 24.)  The Retirement Board also did not provide Plaintiff with a pre-termination hearing. (*Id*. at ¶ 23.)  And, since January of 2010, the Retirement System and/or Retirement Board has had exclusive use of Plaintiff's retirement benefits. (*Id*. at ¶ 28.)

On November 9, 2011, based on the termination of his retirement benefits, Plaintiff commenced this action. (*Id*.)  Against all Defendants, Plaintiff asserts claims for: (1) impairment of contractual rights and obligations: (2) denial of substantive and/or procedural due process; (3) denial of equal protection of law; (4) breach of contract/promissory estoppel; (5) lata culpa; and (6) mandamus. (*Id*.)  Plaintiff also asserts an additional claim for breach of fiduciary duty against the Trustees of the Retirement Board, and an additional claim for unjust enrichment against the Retirement System. (*Id*.)

On February 15, 2012, the County Defendants and the Retirement System Defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 24; 25.)  Both motions have now been fully briefed and are ripe for disposition.

## II. Discussion

### A.   Legal Standard for a 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the

grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*.  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## B.    Pennsylvania's Public Employee Pension Forfeiture Act

As set forth in Plaintiff's Complaint, Plaintiff's pension benefits were terminated pursuant to the Pension Forfeiture Act, 43 P.S. §§ 1312-1313. (*Compl.*, ¶ 20.)  The present litigation is largely based on whether Defendants terminated Plaintiff's benefits in compliance with the Pension Forfeiture Act.  In pertinent part, the Pension Forfeiture Act provides:

> (a) Notwithstanding any other provision of law, *no public official or public employee* nor any beneficiary designated by such public official or public employee *shall* be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest*, if such public official or public employee is convicted or pleads guilty* or no defense *to any crime related to public office or public employment*.

> (b) The benefits shall be forfeited upon entry of a plea of guilty or no defense or upon initial conviction and no payment or partial payment shall be made during the pendency of an appeal. If a verdict of not guilty is rendered or the indictment or criminal information finally dismissed, then the public official or public employee shall be reinstated as a member of the pension fund or system and shall be entitled to all benefits including those accruing during the period of forfeiture if any. Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with his employer.

43 P.S. § 1313(a),(b) (emphasis added).  The Pennsylvania "crimes related to public office or public employment" are specifically enumerated in Section 1312.  And, in addition to the enumerated Pennsylvania crimes, "crimes related to public office or public employment" include "all criminal offenses as set forth in Federal law *substantially the same* as the crimes identified herein." 43 P.S. § 1312 (emphasis added).  According to Defendants, the crime of Corrupt Receipt of a Reward for Official Action Concerning Programs Receiving Federal Funds, 18 U.S.C. § 666(a)(1)(B), is "substantially the same" as the enumerated crime of

Bribery in Official and Public Matters, 18 Pa. C.S.A. § 4701. (Docs. 24; 25.)

Pennsylvania case law applying the "substantially the same" requirement of Section 1312 is limited.  And, the cases that have addressed this language have not adopted a specific standard to apply in determining whether two crimes are "substantially the same." Instead, courts consider the specific federal and state offenses in question, and then analyze the elements of the statutes to determine whether they are "substantially the same." *See, e.g., Shiomos v. State Emps.' Ret. Bd.*, 533 Pa. 588, 593, 626 A.2d 158, 161 (1993) (18 U.S.C. § 1951 "is equivalent to one of the enumerated state offenses found at 43 P.S. § 1312(8); namely 18 Pa.C.S. § 4701 (relating to bribery in official and political matters)"); *Merlino v. Phila. Bd. of Pensions & Ret.*, 916 A.2d 1231, 1236 (Pa. Cmwlth. 2007) (18 U.S.C. § 1001(a)(2) and 18 Pa. C.S.A. § 4906(b)(1) are "substantially the same" because "both statutes require a false statement made knowingly to law enforcement authorities"); *Roche v. State Emps.' Ret. Bd.*, 731 A.2d 640, 641 (Pa. Cmwlth. 1999) (federal crime of false declarations to a grand jury, 18 U.S.C. § 1623 is not "substantially the same" as Pennsylvania crime of perjury, 18 Pa. C.S.A. § 4902; instead, "the Pennsylvania crime of perjury is substantially the same as the federal crime of perjury, 18 U.S.C. § 1621"); *see also Gioffre v. Bd. of Pensions & Ret. of Phila.*, No. 97-5433, 1999 WL 239410, at *4 (E.D. Pa. Mar. 31, 1999).  As the parties and the Court have been unable to identify any precedent determining whether 18 U.S.C. § 666(a)(1)(B) is "substantially the same" as 18 Pa. C.S.A. § 4701, the Court will conduct its own analysis as to the similarities of the elements of the two crimes.

The federal statute under which Plaintiff pled guilty, 18 U.S.C. § 666(a)(1)(B), provides:

(a) Whoever, if the circumstance described in subsection (b) of this section exists--

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--

. . .

(B) corruptly solicits or demands for the benefit of any person, or accepts

> or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more.

*Id*.

The Pennsylvania offense of Bribery in Official and Political Matters, 18 Pa. C.S.A. § 4701, provides:

> (a) **Offenses defined**.--A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
>
> (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;
>
> (2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or
>
> (3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

*Id*.

To establish a violation of 18 U.S.C. § 666(a)(1)(B), the following elements must be established beyond a reasonable doubt:

> 1) corrupt solicitation or [acceptance or agreement to accept]; 2) of anything of value; 3) with the intention of being influenced in connection with any transaction of a local government or organization receiving at least $10,000 in federal funds annually; 4) where the transaction involves anything of value of $5,000 or more.

*United States v. Cicco*, 938 F.2d 441, 444 (3d Cir. 1991). Similarly, 18 Pa. C.S.A. § 4701 requires the following elements be proven beyond a reasonable doubt:

> First, that the defendant solicited, accepted, or agreed to accept, from another a pecuniary benefit; and
>
> Second, that the pecuniary benefit was solicited, accepted, or agreed on as consideration for the decision, vote, recommendation, or other exercise of official discretion of the defendant as a public servant.

*Pa. Suggested Standard Criminal Jury Instructions* § 15.4701B (2010).

Plaintiff argues that 18 U.S.C. § 666(a)(1)(B) and 18 Pa. C.S.A. § 4701 are not "substantially the same" crimes because "of the important differences in the statutes

concerning the matter of the defendant's intent and the state of mind of the giver and the recipient." (Doc. 30)  Plaintiff asserts that "the federal crime can be committed simply by receiving a reward or gratuity in connection with government business or a government transaction, [while] bribery under the state statute requires a pecuniary benefit 'as consideration,' for some action by a government official.  That is, as part of a *quid pro quo*." (*Id.*)  Thus, Plaintiff argues that the federal crime that would be "substantially the same" as Section 4701 is 18 U.S.C. § 201, the federal bribery statute. (*Id.*)

The Court disagrees with Plaintiff's conclusion that 18 U.S.C. § 666(a)(1)(B) and 18 Pa. C.S.A. § 4701 are not "substantially the same" crime.  Here, Plaintiff's construction of Section 1312 essentially requires the federal crime to be identical or the "same" as an enumerated state crime.   Such an interpretation of Section 1312 would render the "substantially" requirement of Section 4701 superfluous, and the Court cannot ignore the plain language of the statute.  And, as quoted above, the statutes are "substantially the same" as both the federal and state crimes require the government to prove beyond a reasonable doubt that a government or public official: (1) accepts or agrees to accept; (2) a pecuniary benefit; (3) related to the performance of a government function or government business. *Compare* 18 U.S.C. § 666(a)(1)(B), *with* 18 Pa. C.S.A. § 4701.  While the crimes are not identical- § 666(a)(1)(B) permits a conviction based on the acceptance of a benefit with the intent to be influenced or rewarded but Section 4701 requires the benefit to be taken as consideration for the official action- *compare* 18 U.S.C. § 666(a)(1)(B), *with* 18 Pa. C.S.A. § 4701, the statutes are nevertheless "substantially the same."  That is, both statutes criminalize the conduct of a public official that solicits, accepts, or agrees to accept something of value that is offered to the individual based on his or her status as a public official.  Thus, 18 U.S.C. § 666(a)(1)(B) and 18 Pa. C.S.A. § 4701 are "substantially the same" crime, and Defendants properly terminated Plaintiff's retirement benefits under Section 1313.

**C.    Plaintiff's Claims**

**1.    Contract Clause**

Count I of Plaintiff's Complaint asserts a claim for the impairment of contractual rights. (*Compl*.) Defendants move to dismiss Count I of Plaintiff's Complaint and argue that Plaintiff's contract for retirement benefits was not impaired because the Pension Forfeiture Act predates Plaintiff's contract and because the decision of the Retirement Board to terminate benefits does not constitute legislative action. (Docs. 24; 33.)  In opposition, Plaintiff argues that Defendants' erroneous application of PEPFA constitutes an unconstitutional impairment of contract by what amounts to a new rule adopted by Defendants. (Doc. 29.)

The Constitution's Contract Clause, set forth in Article I, Section 10, provides that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts." U.S. Const. art. I, § 10.  "In order to state a claim under the Contract Clause, the plaintiff must allege that (1) a contractual right existed, (2) a change in state law impaired the contract, and (3) the impairment was substantial." *Swift v. McKeesport Hous. Auth.*, 726 F. Supp. 2d 559, 570 (W.D. Pa. 2010) (citing *Transp. Workers Union of Am., Local 290 v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998)); *see also Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) ("To make out a claim under that clause, [Plaintiff] must show that 'a change in state law has operated as a substantial impairment of a contractual relationship.'" (quoting *Transp. Workers Union*, 145 F.3d at 621)).  Accordingly, "under the Contract Clause, the contract in question must preexist the passage of state law." *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 874 (3d Cir. 2012)

The prohibition on the impairment of contractual rights under the Contract Clause "applies only to exercises of legislative power." *Mabey*, 666 F.3d at 874.  While "the application of the Contract Clause is not limited solely to formal enactments and statutes of the state legislature," the Supreme Court has noted that "'the prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.'"

*Id*. (quoting *Ross v. Oregon*, 227 U.S. 150, 162, 33 S. Ct. 220, 57 L. Ed. 458 (1913)); *see also Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at *9 (E.D. Pa. Nov. 12, 2008) ("the contracts clause applies only to legislative acts-enforcement of zoning regulations is an administrative, not a legislative act and is therefore not within the scope of the contracts clause"); *Skoutelas v. Port Auth. of Allegheny Cnty.*, No. 07-1077, 2008 WL 1773876, at *4-*5 (W.D. Pa. Apr. 16, 2008).  Although there is "no simple formula" for a court to follow in determining whether a government act is an exercise of legislative authority, "an act bears the hallmarks of legislative authority when it 'changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.'" *Mabey*, 666 F.3d at 874 (quoting *Ross*, 227 U.S. at 163). "Thus, there is no violation of the Contract Clause when the act in question 'investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.'" *Id*. (quoting *Ross*, 227 U.S. at 163).

In *Mabey*, the Third Circuit affirmed the district court's grant of summary judgment to the defendants on the plaintiff's Contract Clause claim. *See id*. at 875.  The plaintiff alleged that the Pennsylvania Department of Transportation ("PennDOT") impaired its contract when PennDOT adopted a new interpretation of the Pennsylvania Steel Products Procurement Act. *See id*.  While the plaintiff acknowledged that the statute was in effect at the time the plaintiff entered into its contracts, the plaintiff argued that PennDOT's change in the interpretation of the act constituted a "change in state law." *Id*. at 874.  The Third Circuit rejected the plaintiff's argument. *See id*.  Specifically, the court reasoned that PennDOT's revised interpretation of the Act did not amount to a "new rule," and acknowledged that the Contract Clause is not violated when there is a new interpretation of an antecedent statute. *Id*. at 875 (citing *Fleming v. Fleming*, 264 U.S. 29, 30-32, 44 S. Ct. 246, 68 L. Ed. 547 (1924)).  Thus, "[b]ecause PennDOT's actions interpreted and applied a law that had been in force for over 30 years, it did not exercise legislative authority subject to scrutiny under the Contract Clause." *Id*.

In *Perano*, the plaintiff alleged that the defendants impaired his contract for the

11

development of a mobile home park. *See Perano*, 423 F. App'x at 235.  In particular, the plaintiff asserted that the defendants impaired his contract by enforcing ordinances, issuing stop work orders, and by denying construction permits.  *See id*. at 239.  After the district court dismissed the plaintiff's Contract Clause claim with prejudice, the plaintiff appealed.  *See id*. at 236.  On appeal, the Third Circuit affirmed the district court's dismissal of the Contract Clause claim for failure to state claim upon which relief could be granted. *See id*. at 239.  Specifically, the Third Circuit reasoned that the defendants' alleged acts were not "an exercise of legislative power. . . . [T]he Township did not change any laws; it merely enforced them in a way that allegedly impaired [the plaintiff's] rights." *Id*.

As with the plaintiffs in *Mabey* and *Perano*, Plaintiff Brace has not alleged, nor can he allege based on the facts of this case, a "change in state law" to adequately state a Contract Clause claim. Here, as identified by County Defendants, PEPFA predates Plaintiff's contractual rights. Therefore, Plaintiff cannot rely on the enactment of the statute as a change in state law. *See, e.g., Mabey*, 666 F.3d at 875.  In addition, Plaintiff acknowledges that the Retirement Board's decision to terminate his benefits was based on an application of Section 1312 of PEPFA. (*Compl.*, ¶¶ 31, 44.)  As such, the Retirement Board's decision regarding Plaintiff's benefits is not a "new rule"; instead, the applicable "rule" is, and has been since Plaintiff obtained employment with the County, the Pension Forfeiture Act.  Thus, Defendants' actions regarding Plaintiff's retirement benefits are best characterized as interpretative. *See Mabey*, 666 F.3d at 875.  Plaintiff has therefore not alleged an exercise of legislative power, but, instead, he has simply asserted that Defendants have enforced PEPFA in a manner that allegedly impaired his contractual rights. *See Perano*, 423 F. App'x 239.  As these allegations are insufficient to state a claim, Plaintiff's Contract Clause claim will be dismissed.  And, Plaintiff will not be given leave to amend because no allegations on these facts would show that the Board's termination of Plaintiff's benefits was an act of legislative authority.

### 2.     Due Process

Count II of Plaintiff's Complaint alleges claims for the denial of his substantive and

procedural due process rights. (*Compl.*)  Plaintiff asserts that he had a property interests in his pension benefits and that his benefits were terminated without notice and/or a hearing of any kind. (*Id.* at ¶¶ 42-43.)  In their motions to dismiss, Defendants assert that pension benefits do not constitute a property interest entitled to substantive due process protection and that Plaintiff was not due any process. (Docs. 24; 25.)

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment contains both procedural and substantive due process protections. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846-47, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992)).

### a.    Substantive Due Process

To establish a substantive due process violation, a plaintiff must prove: (1) the deprivation of an interest protected by the substantive due process clause; and (2) that the government's deprivation of that protected interest shocks the conscience. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir.2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir.2008)); *see also Iredia v. Fitzgerald*, No. 10-228, 2010 WL 2994215, at *5 (E.D. Pa. July 27, 2010) ("[t]o state a claim for denial of substantive due process, a plaintiff must allege that he was denied a protected interest by arbitrary or capricious government action" (citing *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir.1998))).  When a party asserts a substantive due process claim for the non-legislative deprivation of a property interest, the court must make a threshold determination of whether the property interest is "fundamental" under the Constitution. *See Nicholas*, 227 F.3d at 142.  If the property interest is fundamental:

> [T]hen substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

*Id.* "Fundamental rights are rights that are 'deeply rooted in the Nation's history and

traditions .... [and] interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'" *Wrench Transp. Sys., Inc. v. Bradley*, 340 F. App'x 812, 815 (3d Cir. 2009) (quoting *Nicholas*, 227 F.3d at 140).

This Court has previously determined that a pension benefit is not a fundamental right entitled to substantive due process protection. *See Kegolis v. Borough of Shenandoah*, No. 03-0602, 2006 WL 3814311, at *3 (M.D. Pa. Dec. 27, 2006). In dismissing the plaintiff's substantive due process claim in *Kegolis*, this Court held "that a pension benefit, whether vested or unvested, does not constitute property entitled to substantive due process protection in the Third Circuit." *Id*; *see also Walker v. City of Waterbury*, 601 F. Supp. 2d 420, 425 (D. Conn. 2009) ("Plaintiffs do not have a fundamental right to their vested pension benefits that is protected by the substantive component of the due process clause of the Constitution"); *McGovern v. City of Jersey City*, No. 98-5186, 2006 WL 42236, at *13 (D. N.J. Jan. 6, 2006) (relying on *Nicholas* to support conclusion that pension benefits were not afforded substantive due process protection).

Plaintiff has failed to allege that he was denied a property interest entitled to substantive due process protection. Although Plaintiff asserts that his vested retirement benefits are a property interest, (*Compl.*, ¶ 47), this argument is foreclosed by this Court's decision in *Kegolis*. Furthermore, even assuming *arguendo* that Plaintiff had a protected property interest in his pension, his allegations do not support "conscience shocking behavior entitl[ing] Plaintiff to relief." *Schimes v. Barrett*, No. 07-0872, 2010 WL 1330179, at *8 (M.D. Pa. Mar. 30, 2010), *aff'd*, 427 F. App'x 138 (3d Cir. 2011). Here, Plaintiff alleges: (1) Defendants erroneously concluded that the federal crime under 18 U.S.C. § 666(a)(1)(B) is substantially the same as a crime enumerated in 43 P.S. § 1312; (2) Defendants failed to adequately train and supervise employees regarding Plaintiff's constitutional rights; (3) Defendants' acts were wanton; (4) Defendants failed to request a declaratory judgment as to whether Plaintiff was disqualified from receiving his pension prior to the termination of benefits; and (5) Defendants engaged in an "irrational practice" that denied Plaintiff's benefits "by deliberate and reckless indifference to the mandates of law."

(*Compl.*, ¶¶ 35, 44, 46, 48, 52, 54.)  At most, these allegations indicate that Defendants "acted in what [they] perceived to be its legal and financial interest [and] does not demonstrate the sort of egregious conduct that would shock the conscience." *Schimes*, 2010 WL 1330179, at *8.  Stated differently, based on the similarities between 18 U.S.C. § 666(a)(1)(B) and 18 Pa. C.S.A. § 4701 as discussed above, Plaintiff has not alleged that the decision to terminate his pension was "conscience shocking," or that Defendants terminated Plaintiff's benefits in bad faith or from a desire to injure. *See Schimes*, 427 F. App'x at 142.  As a result, Plaintiff's substantive due process claim will be dismissed.  And, because Plaintiff does not have a property interest in his pension, amendment of the substantive due process claim would be futile, and the claim will be dismissed with prejudice.

### b.    Procedural Due Process

To state a procedural due process claim, "a plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, and property'; and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F. 3d 225, 233-34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  Thus, "for a procedural due process violation, courts must determine (1) whether the individual had a protected interest making available the due process protections, and if so, (2) whether the individual was afforded appropriate process." *Iredia*, 2010 WL 2994215, at *5 (citing *Shoats v. Horn*, 213 F.3d 140 (3d. Cir.2000)).  "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': . . . 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (quoting *Paul v. Davis*, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)).

According to Plaintiff, retirement benefits under Pennsylvania law cannot be terminated without procedural due process.  For example, in *Olsen v. State Emps.' Ret. Bd.*,

688 A.2d 255, 258 (Pa. Cmwlth. Ct. 1997), the Commonwealth Court stated: "the Board must understand that the retirement benefits it administers are property rights."  Thus, the Commonwealth Court instructed the Board to follow the hearing and appeal proceedings in accordance with due process. *See id*.  Similarly, in *Cherillo v. Ret. Bd. of Allegheny Cnty.*, 796 A.2d 420, 421 (Pa. Cmwlth. Ct. 2002), the Commonwealth Court determined that a retiree was entitled to due process prior to the termination of his disability retirement benefits.  However, neither *Olsen* nor *Cherillo* involved the termination of benefits pursuant to the Pension Forfeiture Act, which is an important distinction in this analysis.

In a case more factually aligned to the matter before the Court, *Horsley v. Phila. Bd. of Pensions & Ret.*, 510 A.2d 841, 842-43 (Pa. Cmwlth. Ct. 1986), a retired city employee's pension was terminated after he entered a guilty plea to two counts of conspiring to violate the Hobbs Act, 18 U.S.C. § 1951.  The retired employee alleged that the termination of his pension benefits violated his due process right to a hearing. *See id*. at 845.  In affirming the decision of the trial court, the Commonwealth Court reasoned that:

> [T]he trial court weighed the employee's strong interest in maintaining his pension benefits against the risk of erroneous deprivation and, recognizing that the facts were undisputed, concluded that the risk of erroneous deprivation was negligible.  Additionally, the trial court also recognized the city's interest in protecting its pension system from 'unnecessary payments to dishonest or felonious employees to be legitimate and compelling' in correctly determining that due process did not require a pre-termination hearing in this case.

*Id*. at 567.

And, in *Gioffre v. Bd. of Pensions & Ret.*, No. 97-5433, 1999 WL 239410, at *1 (E.D. Pa. Mar. 31, 1999), the plaintiff, a police officer, was discharged following an internal police force investigation of corruption.  The plaintiff then received a letter from the Retirement Board informing him that he would not be eligible for pension benefits once he reached retirement age, but if he disagreed with the determination he could request a hearing. *See id*.  The plaintiff then requested a hearing, but it was determined to be premature as the plaintiff had not yet been charged with a crime. *See id*.  Shortly thereafter, the plaintiff was indicted for violations of the Hobbs Act, 18 U.S.C. § 1951, and he was ultimately sentenced to fifteen (15) months in prison. *See id*. at *2.  A hearing was then conducted to determine

whether the Board's pre-conviction determination of ineligibility was proper, but the focus of the proceedings was not on the plaintiff, but another former officer. *See id*.  Once the plaintiff attained the age for which he would have been eligible for retirement, he applied for his pension benefits. *See id*.  The plaintiff repeatedly sought a hearing on the merits of his application for benefits. *See id*.  His requests were denied each time. *See id*.  Ultimately, the plaintiff filed suit alleging that the City denied his pension benefits without procedural due process. *See id*. at *1.

In granting the defendants' motion for summary judgment, the court recognized that the "right to receive pension benefits was contingent on avoiding a criminal conviction for a corrupt act." *Id*. at *6.  The court reasoned that even if the plaintiff was entitled to a hearing prior to the denial of benefits, the failure to provide a hearing does not necessarily imply that the plaintiff was denied due process in not receiving one. *See id*. at *3.  And, in applying that principle, the district court concluded:

> [W]here due process is implicated, the purpose of a hearing is to avert or rectify a mistake in the seizure or deprivation of property.  The point of a hearing is to determine relevant facts.  It was uncontroverted at the time he applied for benefits that plaintiff had facilitated the collection of bribes and was convicted of violating the Hobbs Act.  The judgment of conviction was not reversed or vacated.  No hearing could thus alter the fact that by operation of law, any interest of plaintiff in a pension had been extinguished or forfeited.  The Board has no discretion to award benefits to someone convicted of an enumerated offense.

*Id*. at *4.

The Court finds the reasoning of the district court in *Gioffre* and the Commonwealth Court in *Horsley* persuasive.  Although Plaintiff argues that the federal crime he was convicted of is not substantially the same as to any enumerated state crimes under PEPFA, the Court, as discussed, does not agree.  And, because 18 U.S.C. § 666(a)(1)(B) is "substantially the same" as 18 Pa. C.S.A. § 4701, the Board had no discretion to continue providing Plaintiff with retirement benefits, *see Gioffre*, 1999 WL 239410, at *4, as PEPFA expressly states that "benefits *shall* be forfeited upon entry of a plea of guilty." 43 P.S. § 1313.  Thus, the Pennsylvania legislature specifically determined that, upon entry of a guilty plea to "a crime related to public office or public employment," procedural safeguards

are not required prior to the termination of benefits.  Plaintiff, therefore, was not entitled to a hearing under the express terms of the Pension Forfeiture Act.

Moreover, even if Plaintiff was entitled to a hearing, the uncontroverted facts establish that Plaintiff pled guilty to a violation of 18 U.S.C. § 666(a)(1)(B), and that his plea was ultimately accepted by this Court. (*Compl.*, ¶¶ 15, 18-19.)  Thus, by operation of law, "any interest of Plaintiff in a pension had been extinguished or forfeited." *Gioffre*, 1999 WL 239410, at *4.  As a result, because there is "simply no factual dispute that a pre-deprivation notice or hearing could have addressed," *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), and because the "probable value, if any, of additional or substitute procedural safeguards," would be minimal in light of Plaintiff's voluntary admission of criminal guilt and the procedural due process he was afforded in his criminal prosecution, *Graham v. City of Phila.*, 402 F.3d 139, 146, (3d Cir. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)), Plaintiff's procedural due process claim will be dismissed.  And, based on this reasoning, Plaintiff cannot state a plausible procedural due process claim.  Therefore, the claim will be dismissed with prejudice.

### 3.      Equal Protection

Count III of Plaintiff's Complaint asserts an equal protection claim. (*Compl.*)  While not so identified in the Complaint, the claim, as argued by the parties, alleges a "class-of-one" theory of equal protection.  According to Plaintiff, in other cases where County employees had been convicted of crimes not enumerated in 43 P.S. § 1312, Defendants have requested a declaratory determination as to whether the employee was disqualified from receiving benefits. (*Id*. at ¶ 52.)  And, because he was intentionally treated differently from similarly situated individuals without a rational basis, he asserts that he was denied equal protection of law. (*Id*. at ¶¶ 52-53.)  The County Defendants and Retirement System Defendants both argue that Plaintiff's "class-of-one" theory of equal protection must be dismissed because Plaintiff's guilty plea provided a rational basis for Defendants' decision to terminate his benefits. (Docs. 24; 25.)  The Retirement System Defendants also argue that the "class-of-one" theory has no application in the public employment context. (Doc.

25.)

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  Under the "class-of-one" theory, a plaintiff may advance an equal protection claim absent membership in a protected class by alleging irrational and intentional differential treatment when compared with similarly situated individuals. *D'Atilio v. Dover Twp.*, No. 06-1931, 2008 WL 3925833, *3 (M.D. Pa. Aug.21, 2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).  To state an equal protection claim on a "class-of-one" theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir.2006).  As to first element, parties are only "similarly situated," if they are "'alike in all relevant aspects.'" *Perano*, 423 F. App'x at 238 (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.2008)).

As to the third requirement, "[i]f there was a rational basis for the action of the decisionmaker, there is no equal protection class of one violation." *Montanye v. Wissahickon Sch. Dist.*, 399 F. Supp. 2d 615, 621 (E.D. Pa. 2005) (citing *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir.2005); *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir.2002); *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir.1998)). District courts in the Third Circuit have recognized the "perplexing situation" that occurs when, on a motion to dismiss, the district court must determine whether a rational basis existed for the alleged differential treatment. *See, e.g., Cradle of Liberty Council, Inc v. City of Phila.*, No. 2008 WL 4399025, at *6-*7 (E.D. Pa. Sept. 25, 2008).  In that regard, Judge Buckwalter in *Cradle of Liberty* stated:

> On one hand, the Court is considering a motion to dismiss, meaning that all inferences must be drawn in favor of the non-movant and dismissal is appropriate only if, as discussed above, the Plaintiff has failed to provide factual allegations with the heft to raise the complaint beyond the speculative level. On the other hand, [Defendant] may not be held liable under [Plaintiff's] class-of-one claim unless there is no conceivable rational relationship between the differential treatment and a legitimate governmental interest. Applying the

> 12(b)(6) standard, every benefit of the doubt goes to [Plaintiff], but applying rational basis review, the Court must grant great deference to [Defendant].
>
> 'The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.'

*Id*. (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1991)).[2]  To determine whether a rational basis exists at the motion to dismiss stage, a court may consider the defendant's motion, the plaintiff's complaint, and any other admissible documents. *See, e.g., Prof'l Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp. 2d 575, 588 (E.D. Pa. 2010) (dismissing the plaintiff's "class-of-one" claim when the defendant had a rational basis for alleged difference in treatment).

Although the Court may not permit the rational basis standard to defeat the broad 12(b)(6) standard, *see Cradle of Liberty*, 2008 WL 4399025, at *7, the Court simply cannot find that Plaintiff has adequately alleged a "class-of-one" equal protection claim.  While Plaintiff has alleged that Defendants intentionally treated him differently than other similarly situated individuals, (*Compl.*, ¶ 52), the face of Plaintiff's Complaint makes clear that Defendants had a rational basis for the alleged difference in treatment based on these

---

[2]     The Seventh Circuit has held that to survive a "12(b)(6) motion to dismiss on a 'class-of-one' equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications,'" *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008), while the Fourth Circuit has required a plaintiff to "negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification,'" to survive a motion to dismiss. *Herman v. Lackey*, 309 F. App'x 778, 785 (4th Cir. 2009) (affirming district court's dismissal of the plaintiff's "class-of-one" claim because he did not negate the defendant's hypothetical rational basis for difference in treatment); *see also Solis v. City of Fresno*, No. 11-0053, 2012 WL 868681, at *9 (E.D. Cal. Mar. 13, 2012) (if the complaint "on its face suggests a rational reason for the plaintiff's treatment, 'class-of-one' equal protection claim must fail").

facts.[3]  As set forth above, Plaintiff pled guilty to a crime that was substantially similar to a crime enumerated within the definition of "crimes related to public office or public employment" under 43 P.S. § 1312.   Based on these apparent similarities, it was unnecessary for the Board to commence a declaratory judgment action prior to terminating Plaintiff's retirement benefits because Defendants had a rational reason to terminate Plaintiff's benefits- his guilty plea to a crime "substantially the same" as one enumerated in Section 1312.  Thus, even though Plaintiff alleges that the Board acted without a rational basis, (*Compl.*, ¶ 53), because the Court is not required to credit Plaintiff's "'legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997), Plaintiff's "class-of-one" equal protection claim will be dismissed with prejudice.

### 4. Remaining State-Law Claims

Counts IV-VIII of Plaintiff's Complaint assert state-law claims for breach of fiduciary duty, unjust enrichment, breach of contract/promissory estoppel, lata culpa, and mandamus. (*Compl.*)  The Court will dismiss these claims without prejudice to allow Plaintiff to re-file them in state court if he so pleases.

District courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  A district court may refuse to exercise such jurisdiction where, as in the instant case, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In fact, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide

---

[3]     Since Plaintiff has not adequately pled all elements of a "class-of-one" claim, the Court need not address the Retirement System Defendants' argument that the claim is fundamentally flawed as the "class-of-one" theory has no application in the public employment context. *See Enquist v. Oregon Dep't of Agric.*, 533 U.S. 591, 128 S. Ct. 2147, 170 L. Ed. 2d 975 (2008).

an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

Here, the Court has determined that all of Plaintiff's federal claims will be dismissed for failure to state a claim for which relief can be granted. And, since the Court will dismiss the claims for which it has jurisdiction under 28 U.S.C. § 1331, and the Court finds no affirmative justification to warrant the exercise of supplemental jurisdiction over the remaining state-law claims, these claims will be dismissed without prejudice.

**D.     Leave to Amend**

When a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment unless amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). However, "a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover [may] properly [be] dismissed without leave to amend." *Bey v. Pa. Bd. of Probation & Parole*, No. 10-2597, 2012 WL 1123893 (M.D. Pa. Apr. 4, 2012) (citing *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir.2002)).

Plaintiff will not be permitted to amend his federal claims because, even taking his allegations as true and viewing them in a light most favorable to him, the Court finds that amendment would be futile. As discussed above, Plaintiff cannot establish a Contract Clause claim under these facts because the Board's decision to terminate his benefits was not legislative action. Furthermore, Plaintiff does not have a property interest in his pension, and, therefore, amendment of his substantive due process claim would be futile. Moreover, as the Pension Forfeiture Act mandated the termination of Plaintiff's retirement benefits when he pled guilty to 18 U.S.C. § 666(a)(1)(B), amendment of Plaintiff's procedural due process claim would likewise be futile. And, as the face of Plaintiff's Complaint makes clear that Defendants had a rational basis for terminating Plaintiff's retirement benefits based on his guilty plea, amendment of the "class-of-one" equal protection claim would also be futile.

### III. Conclusion

For the above stated reasons, Plaintiff's Contract Clause, Due Process Clause, and Equal Protection Clause claims will be dismissed.  Further, because leave to amend would be futile, these claims will be dismissed without opportunity to amend.  Lastly, the remaining state-law claims will be dismissed without prejudice to allow Plaintiff to re-file them in state court if he so desires.

An appropriate order follows.


 June 12, 2012                                              /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                             United States District Judge